IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| ROBERT GRIZZLE, § | |
| Institutional ID No. 1998719, § | |
| § | |
| Plaintiff, § | |
| § | CIVIL ACTION NO. 5:22-CV-017-BQ |
| v. § | |
| § | |
| BRYSON MCINTIRE, *et al.*, § | |
| § | |
| Defendants. § | |

## FINDINGS, CONCLUSIONS, AND
## RECOMMENDATION AND ORDER OF TRANSFER

Proceeding pro se and *in forma pauperis*, Plaintiff Robert Grizzle brings this action under 42 U.S.C. § 1983, alleging violations of his constitutional rights, as well as his rights under the Americans with Disabilities Act (ADA) and Rehabilitation Act (RA), while incarcerated at the Preston Smith and John Montford Units of the Texas Department of Criminal Justice (TDCJ). *See* ECF No. 1. As of this date, not all parties have consented to proceed before the magistrate judge.

Now before the Court is a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by the State of Texas and TDCJ (collectively, Defendants). ECF No. 28. Grizzle filed an untimely response in opposition.[1] ECF No. 43. The motion is now ripe for decision.

---

[1] Defendants timely filed the motion on November 30, 2022. ECF No. 28. Grizzle later notified the Court that he did not receive it, prompting the Court to mail a copy of the pleading on February 23, 2023. ECF Nos. 37, 41. One day prior to docketing these Findings, Conclusions, and Recommendations (March 30), the Court received Grizzle's response, which he apparently did not mail to the Court until March 23. ECF No. 43, at 9. Because the undersigned is recommending that the district judge deny Defendants' motion, the Court has reviewed, but not considered, Grizzle's response. Moreover, as the FCR is in no way based on Grizzle's response, and because Defendants have fourteen days to object, the Court need not wait on a reply from Defendants.

After considering the motion, pleadings, and applicable law, the undersigned recommends the United States District Judge **DENY** Defendants' Motion to Dismiss. Further, it is the opinion of the undersigned that this matter must be transferred to the district judge for further proceedings.

## I.  Background

### A. Preliminary Screening

Grizzle filed his Complaint on February 14, 2022, and the United States District Judge transferred this case to the undersigned United States Magistrate Judge for preliminary screening under 28 U.S.C. §§ 1915 and 1915A. ECF Nos. 1, 6. The undersigned thereafter reviewed Grizzle's Complaint, as well as authenticated records provided by TDCJ, and held an evidentiary hearing pursuant to *Spears v. McCotter*, 766 F.2d 179, 181–82 (5th Cir. 1985), where Grizzle appeared and testified under oath. ECF Nos. 8, 9, 10. After considering the allegations in Grizzle's Complaint, his testimony at the *Spears* hearing, authenticated records provided by TDCJ, and applicable law, the undersigned determined that Grizzle's ADA/RA claims against the State of Texas and TDCJ, as well as his excessive force claim against Bryson McIntire, survived screening.[2] ECF No. 16, at 57–66. The Court directed service and ordered the parties to file an answer or other responsive pleading regarding these claims. *Id.* at 66–68; *see* ECF No. 26 (Bryson McIntire's Answer); ECF No. 28 (Texas and TDCJ's Motion to Dismiss).

---

[2] The Court concluded that all of Grizzle's other 42 U.S.C. § 1983 claims failed to state a claim for relief and dismissed them through the same order. *See* ECF Nos. 16, 18. Grizzle appealed the dismissal. ECF No. 31. Thereafter, Grizzle filed a motion to amend, seeking to cure the deficiencies in his Complaint. *See* ECF No. 34. The undersigned **RECOMMENDS** that the district judge deny the motion because the Court lacks jurisdiction to allow amendment of those claims while the appeal is pending. *See, e.g.*, *Wooten v. Roach*, 964 F.3d 395, 404 (5th Cir. 2020) (holding that district court wrongfully asserted jurisdiction over aspects of the case involved in the appeal by accepting an amended pleading that altered the status of the appeal); *Dayton Indep. Sch. Dist. v. U.S. Min. Prods. Co.*, 906 F.2d 1059, 1064 (5th Cir. 1990) (stating district court lacked jurisdiction to grant leave to amend complaint while appeal was pending).

### B. Defendants' Motion to Dismiss and Grizzle's Factual Allegations Concerning the ADA and RA claims

Grizzle's live claims against Defendants allege violations of his rights under the ADA and RA. *See* Compl. 3, 17–45, ECF No. 1.[3] According to Grizzle's Complaint, he has "knee problems" due to a series of incidents. *Id.* at 17. He contends that Defendants discriminated against him in the following ways: (1) requiring him to shower in a regular shower despite possessing a medical shower pass; (2) failing to provide him a cell with a disability accessible shower; (3) excluding him from showering on one or more occasion(s); and (4) preventing him from attending medical appointments. *Id.* at 37, 41, 43–45; *see* ECF No. 16. Defendants' Motion concerns one incident in which TDCJ Montford Unit Correctional Officer (CO) Madison Hendricks allegedly interfered with Grizzle's ability to take a shower. Compl. 23; Mot. 2–5, ECF No. 28.

On September 30, 2021, CO Hendricks arrived at Grizzle's cell to accompany him to the shower area. Compl. 23. Grizzle hopped on one leg to the shower and told her he had a medical shower pass, which Montford Nurse Jane Doe #2 confirmed. *Id.* Despite this, they informed Grizzle that there were no available medical showers and told him to use "a regular shower on one foot." *Id.* At the evidentiary hearing, Grizzle clarified that CO Hendricks told him that the Montford Unit does not have a medical shower, but Grizzle questions the veracity of that claim because "it's a medical unit." Tr. 2:57:50–:57:58.[4] He conceded, however, that he did not see one there. Tr. 2:58:00–:58:02.

---

[3] Page citations to Grizzle's pleadings refer to the electronic page number assigned by the Court's electronic filing system.

[4] Citations to the transcript reference the Court's audio recording of the evidentiary hearing held April 14, 2022.

Defendants argue that Grizzle's allegations are insufficient to state a claim for intentional discrimination under the ADA/RA because "[e]ven if it could be shown that Grizzle had a qualifying disability and was denied a reasonable accommodation of a medical shower, Grizzle was never denied the medical shower by reason of his disability." Mot. 5. Defendants point to Grizzle's representation that CO Hendricks told him "there were no medical showers available." *Id.* As a result, Grizzle purportedly did "not satisfy his burden to show that TDCJ did not provide a medical shower by reason of his injured knee," which defeats any claim for "compensatory damages under the ADA." *Id.* Similarly, Defendants aver that Grizzle's claim under the RA fails "[b]ecause Grizzle cannot plausibly allege that he has been discriminated against *solely* by reason of his alleged disability." *Id.* (emphasis omitted).

Moreover, Defendants argue that any ADA/RA claims against the State of Texas should be dismissed as they are redundant to those against TDCJ. *Id.* at 6.

## II. Discussion

A court must dismiss a complaint filed *in forma pauperis* by a prisoner against a government entity or employee if, at any time, the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2) (2017); *see also* § 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*).

### A. Standard for Evaluating a Motion to Dismiss Under Rule 12(b)(6)

To survive a Rule 12(b)(6) motion, a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011). "A claim has facial

4

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering 12(b)(6) motions, courts must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). A court need only determine whether the plaintiff has stated a legally cognizable claim; it does not evaluate whether the plaintiff is ultimately likely to prevail. *See United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Rule 12(b)(6) motions are disfavored and granted sparingly. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quoting *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982)).

> **1. The district judge should deny the Motion because Grizzle has pleaded sufficient facts to state a claim for intentional discrimination under the ADA/RA.**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a *prima facie* claim under the ADA, a plaintiff must show the following:

> (1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability.

*Epley v. Gonzalez*, 860 F. App'x 310, 312 (5th Cir. 2021) (per curiam) (quoting *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004)). "In addition to their respective prohibitions of disability-based discrimination, both the ADA and the Rehabilitation Act impose upon public entities an affirmative obligation to make reasonable accommodations for disabled

individuals." *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005); *see Buchanan v. Harris*, No. 20-20408, 2021 WL 4514694, at *2 (5th Cir. Oct. 1, 2021) (quoting *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020)) ("The ADA requires public entities, including jails and prisons, to make 'reasonable accommodations for disabled individuals.'"). For a failure to accommodate claim, a plaintiff must prove that "(1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." *Ball v. LeBlanc*, 792 F.3d 584, 596 n.9 (5th Cir. 2015). Grizzle's allegations are unclear as to whether he relies on a discrimination theory, a failure-to-accommodate theory, or both. *See* Compl. 37 (alleging Defendants "ignored [his] request for a medical shower"), 43 (stating Defendants failed to accommodate him). Because he is a pro se litigant, and as discussed more fully below, the Court liberally construes his pleading as alleging both.

The RA similarly provides that a disabled individual shall not "solely by reason of her or his disability . . . be denied the benefits of . . . any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). To state a claim for relief under the RA, a plaintiff must allege the following: "(1) the existence of a program or activity within the state which receives federal financial assistance; (2) the plaintiff is an intended beneficiary of the federal assistance; and (3) the plaintiff is a qualified handicapped person, who solely by the reason of [his] handicap has" either "been denied benefits from, or otherwise been subject to discrimination under[,] such program or activity." *Hay v. Thaler*, 470 F. App'x 411, 417–18 (5th Cir. 2012) (per curiam) (quoting *Melton*, 391 F.3d at 676 n.8).

The Fifth Circuit has recognized that "[j]urisprudence interpreting either [the ADA or RA] is applicable to both." *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000). This is because

6

"the rights and remedies afforded plaintiffs under Title II of the ADA are almost entirely duplicative of those provided under § 504 of the Rehabilitation Act." *Bennett-Nelson*, 431 F.3d at 454. The causation requirements for the ADA and RA, however, differ in that the RA proscribes discrimination "solely by reason of" disability, where the ADA states that "discrimination need not be the sole reason" for the discrimination. *Id.* (emphasis omitted). Under either statute, a plaintiff must show intentional discrimination to recover compensatory damages. *Delano-Pyle v. Victoria Cnty.*, 302 F.3d 567, 574 (5th Cir. 2002).

Grizzle does not specify why he considers himself disabled. Based on his pleadings, however, the Court liberally construes his claim as asserting that his knee injury qualifies as a disability under the ADA/RA. Compl. 43 ("I am an American with a physical and mental impairment that substantially limits a major life activity, such as showering . . . ."), 44 (stating that he was excluded from services "because of [his] disability I.E. inability to walk" and that his "disability" prevented him from "ambulat[ing]"). At this stage of the proceedings, the Court assumes, without finding, that Grizzle's knee injury constitutes a qualifying disability. *See* 42 U.S.C. § 12102(4)(A) ("The definition of disability . . . shall be construed in favor of broad coverage of individuals . . . ."); *Epley*, 860 F. App'x at 312–13 (explaining that "[w]hether a plaintiff is disabled under the ADA is not a demanding question" and requires only that the Court ask if the plaintiff has a physical impairment that "substantially limits" at least one major life activity such as walking, lifting, or bending (quoting § 12102(2)).

Grizzle maintains that Defendants intentionally discriminated by denying him the opportunity to use a medical shower, despite having a confirmed medical shower pass, and that in doing so they "forced" him "to shower in a regular shower on one foot." Compl. 23. Although Defendants correctly observe that Grizzle admits he did not personally see a medical shower at the

Montford Unit, they mischaracterize his pleadings because Grizzle did not admit "that he was not provided the use of a medical shower because there were no medical showers available." *See* Mot. 5. Rather, he explains that he was *told* there were no medical showers. Compl. 23. But Grizzle also testified that he challenges the veracity of CO Hendrick's representation that the Montford Unit does not have medical showers, primarily because Montford is a medical facility[5]—the implication being that CO Hendrick's statement was a false justification or pretext. *See* Tr. 2:57:50–:57:58. The Court must accept Grizzle's allegations as true and view all facts in the light most favorable to him. *See Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).

In addition to generally challenging the denial of his access to a medical shower, Grizzle contends that Defendants "failed to make a reasonable [accommodation] for [his] disabilities" (Compl. 43), e.g., by providing a shower chair/stool, a shower escort, etc. Grizzle alleges that Defendants did so with knowledge of his need for accommodations and/or the prior medical orders requiring Defendants to accommodate that need. *See id.* at 37, 43–45. The Fifth Circuit has made clear that the intentional discrimination requirement "can be satisfied with evidence that the defendant failed to make reasonable accommodations for a plaintiff's disability." *Epley*, 860 F. App'x at 314. Grizzle's pleadings make no mention of Defendants providing *any* accommodation, and Defendants point to no averment in the pleadings demonstrating otherwise (other than to stand on one leg)—the Court therefore cannot, at this stage, resolve this question. *Cf. Buchanan v. Harris*, No. H-19-4571, 2023 WL 2504764, at *13 (S.D. Tex. Mar. 13, 2023) (granting summary judgment on ADA claim because the record showed that the county jail provided inmate a shower chair to provide him access to shower facilities); *Wilturner v. Richardson*, No. H-21-0413, 2022

---

[5] Per TDCJ's website, the Montford Unit has, *inter alia*, "medical care available 24 hours a day, seven days a week. . . . Fifty skilled nursing beds . . . [o]n-site surgical suite, dialysis facility . . . and brace and limb services." *Montford (JM)*, TEX. DEP'T OF CRIM. JUST., https://www.tdcj.texas.gov/unit_directory/jm html (last visited Mar. 28, 2023).

8

WL 17835511, at *8 (S.D. Tex. Dec. 21, 2022) (dismissing ADA claim because the summary judgment evidence demonstrated that inmate "could have requested an escort to an accessible shower").

In sum, although his allegations are sparse, Grizzle satisfies the elements for the discrimination test—i.e., qualifying disability, denial of services, by reason of disability—as well as the failure-to-accommodate test, i.e., qualifying disability, notice, and failure to reasonably accommodate. *See Epley*, 860 F. App'x at 312; *Ball*, 792 F.3d at 596 n.9. And Defendants provide no other basis, beyond their attack on Grizzle's allegations regarding the availability of a medical shower, on which to conclude that Grizzle's allegations are facially insufficient to state a claim for intentional discrimination under the ADA or RA. *See generally* Mot. 1–5.

Thus, at this stage of the proceedings, Grizzle's allegations, taken as true, sufficiently state ADA/RA violations. *See, e.g.*, *Douthit v. Collier*, No. 20-20550, 2022 WL 5240152, at *2 (5th Cir. Oct. 5, 2022) (concluding inmate sufficiently pleaded a viable cause of action where his allegations "met the three elements required for an ADA failure-to-accommodate claim"); *Epley*, 860 F. App'x at 314 (holding prisoner stated facts sufficient to survive screening on his ADA claim where prisoner's "single-cell restriction had never been formally revoked [and] . . . Montford officials disregarded that restriction," despite knowing "of that restriction" and it being "documented in his medical records"); *Schorsch v. Kwarteng*, No. 2:19-CV-323, 2021 WL 5242983, at *4 (S.D. Tex. Jan. 7, 2021) (recommending denial of prison's motion to dismiss prisoner's ADA claim, where prisoner's allegations "suggest[ed] that prison officials originally provided [p]laintiff with a special housing accommodation . . . based on his physical limitations caused by his qualifying disability" but violated the accommodation and then unlawfully removed it), *R. & R. adopted by* 2021 WL 4129566 (S.D. Tex. Sept. 10, 2021); *Douthit v. Dean*, No. H–

12–2345, 2012 WL 4765793, at *4–5 (S.D. Tex. Oct. 8, 2012) (ordering defendant to answer prisoner's ADA claim based on defendant's alleged denial of reasonable accommodations for his disability); *see also Cadena*, 946 F.3d at 726 (reversing district court's grant of summary judgment to defendant where evidence showed that defendant refused to provide inmate with a wheelchair due to a lack of space, despite the inmate being booked into jail in a wheelchair and defendant observing that she could not walk with crutches and had to be transported to medical in a wheelchair).

### 2. The district judge should deny the motion to dismiss the State of Texas as a redundant party.

Defendants further argue that any claims against the State of Texas should be dismissed as redundant because Grizzle names both Texas and TDCJ but he "has not alleged any differing allegations . . . or asserted how Texas has violated his rights under the ADA" or RA. Mot. 6 (citing *Luke v. Texas*, 46 F.4th 301, 307 (5th Cir. 2022)). The *Luke* panel noted in passing that they "struggle[d] to see what suing Texas directly [did] for [appellant] given that he ha[d] also sued the state agencies" under the ADA. 46 F.4th at 307. The Fifth Circuit, however, made no decision bearing on the ability to bring suit against both a state and its agency. *See id.* (holding district court did not abuse its discretion in dismissing state due to improper service). Accordingly, *Luke* does not resolve the question. Yet, the State of Texas provides no other authority in support of its request. *See* Mot. 6.

Considering Grizzle's specific ADA/RA claims, they relate to conduct by correctional staff and medical personnel at the TDCJ Smith and Montford Units. *See* ECF No. 16, at 59. It is not clear, however, whether the alleged wrongful acts were committed by TDCJ employees, other State actors, or individuals with no State affiliation whatsoever. This necessarily raises a question as to whether the State may be subject to independent liability. *Cf. Norman v. Tex. Dep't of Crim.*

*Just., Inst. Div.*, 293 F. App'x 285, 287–88 (5th Cir. 2008) (per curiam) (concluding TDCJ was not subject to liability under the ADA or RA for any deficiencies in care provided by medical personnel where employees acted as independent contractors); *Nowlin v. Quarterman*, No. 1:08cv307, 2010 WL 4054450, at *1 (E.D. Tex. Oct. 14, 2010) ("The medical providers for prisons within the State of Texas do not work for the Department of Criminal Justice, but rather for separate entities which contract with TDCJ to provide medical care for prisoners; there is no employer-employee relationship between TDCJ and the persons providing direct patient care services."). Further factual and legal development is therefore necessary to determine whether Texas is, as it claims, an unnecessary party in this action.

Accordingly, at this early stage in the proceedings, the undersigned recommends that Grizzle's ADA/RA claims be retained against both the State of Texas and TDCJ. *See Patrick v. Martin*, No. 2:16-CV-216-D-BR, 2018 WL 3966349, at *5 (N.D. Tex. June 29, 2018) (recommending denial of State's motion to dismiss because the court could not "determine with confidence whether the claims . . . against the State [were] truly duplicative of any claims asserted against [TDCJ]" and noting that the ADA "statute itself does not prohibit suit against both the State and its agencies"), *R. & R. adopted by* 2018 WL 3956484 (N.D. Tex. Aug. 17, 2018).

### B. Grizzle's claim against McIntire survives screening.

The undersigned previously found that Grizzle's claim for excessive force against Bryson McIntire in his individual capacity survived preliminary screening. *See* ECF No. 16, at 63–66. As noted above, the pending Motion to Dismiss does not relate to Grizzle's surviving claim against McIntire. Nevertheless, because the undersigned finds this case must be transferred back to the district judge for further proceedings, the Court briefly discusses the surviving excessive force claim.

11

To establish a constitutional violation for excessive use of force by a prison official, a plaintiff must show that the defendant unnecessarily and wantonly inflicted pain. *See Whitley v. Albers*, 475 U.S. 312, 319–21 (1986). Whether an official's use of force is unnecessary or wanton depends on if the "force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quoting *Whitley*, 475 U.S. at 320–21). Factors relevant to this determination include, but are not limited to, the following: (1) the extent of the prisoner's injury; (2) "the need for application of force"; (3) "the relationship between that need and the amount of force used"; (4) "the threat reasonably perceived by the responsible" officers; and (5) any efforts officers made to temper the severity of a forceful response. *See id.* at 7 (internal quotation marks omitted); *accord Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998).

Grizzle brings an excessive use of force claim against McIntire based on a September 27, 2021 incident, which began with Grizzle becoming agitated after McIntire told him to "cuff up" for a medical appointment. Compl. 35. McIntire eventually ordered Grizzle to submit to a strip-search because of Grizzle's purported suicidal statements and impending transfer to the Montford Unit.[6] *Id.* at 20; Tr. 3:02:52–:03:05. Grizzle admits that he refused to exit his cell and began "arguing with them" because he did not want to go to Montford. Tr. 3:06:04–:06:10. McIntire threatened to spray Grizzle with orthochlorobenzalmalononitrile (C.S.) gas if he did not comply with the strip search. Compl. 20; Tr. 3:06:13–:06:15. Rather than complying, Grizzle barricaded his cell by covering the door window with a blanket and mattress. Tr. 3:04:35–:04:42, 3:22:13–:22:27. Grizzle claims that after a while he subsequently began to comply by deconstructing the

---

[6] Prior to the strip search order, officers directed Grizzle to cuff-up and he refused. Compl. 19–20. At the evidentiary hearing, Grizzle clarified that the cuff-up order was no longer active because the officers had already initiated Grizzle's transfer to the Montford Unit. Tr. 3:02:39–:03:30. As such, the Court understands Grizzle as alleging that the only order relevant to the use of force incident is McIntire's instructions for Grizzle to submit to a strip search.

barricade and "taking [his] pants off slowly" when McIntire gassed him "unprovoked." Compl. 20; Tr. 3:06:17–:06:28. Grizzle then barricaded his cell again, and McIntire had to gas him two or three more times to get him to submit. Tr. 3:22:20–:22:27.

TDCJ provided video footage of the use of force incident. The video begins with a direct view of Grizzle's cell door, which has a small window. Grizzle yells into the window and at times holds up a blanket to cover the opening. The officer provides a warning to Grizzle, telling him that gas will be administered if he does not comply with orders. In response to the officer's question, Grizzle says he is ready to comply. Two officers approach the door, and Grizzle can be heard yelling, "I can't, I'm on a cane . . . I'm injured!" The officers walk away. Grizzle then states, "I'm taking my clothes off. I'm not refusing." A moment passes, during which the officers and Grizzle communicate inaudibly. One of the officers then sprays Grizzle with gas through the window. According to the time stamp on the video, the burst of spray lasts between 1.5–2 seconds. Grizzle then holds his mattress and blanket against the door. After a few minutes, a five-man team lines up outside Grizzle's cell. Grizzle inaudibly communicates with the officers. An officer then administers a second spray of gas. Several more minutes go by, during which Grizzle and the officers communicate off and on through the door. Eventually, the officers open the cell door, Grizzle kneels, officers cuff and lift him onto a gurney, and Grizzle is transported to a high security cell. The following exchange then takes place:

| | |
|---|---|
| Officer: | "Do you have any injuries from the use of force?" |
| Grizzle: | "Yes." |
| Officer: | "What are they?" |
| Grizzle: | "My knee." |
| Officer: | "The knee? That's a previous injury. Do you have any injuries from the chemical agent?" |
| Grizzle: | "Yes, I'm burning all over." |
| Officer: | "That's part of the chemical agent. Do you have any other injuries?" |
| Grizzle: | "Yes, my eyes." |
| Officer: | "That's part of the chemical agent. Do you have any other injuries? |

> Grizzle: "Can I decontaminate, please?"
> Officer: "[inaudible] . . . the use of force is complete."

The officer can then be heard stating that Grizzle reported a knee injury, which had "already been seen by medical." A nurse arrives and asks Grizzle, "Do you have any injuries from the use of force?" Grizzle exclaims, "My knee hurts! I can't walk!" The nurse walks away from the door and says, "[inaudible] . . . he's refusing . . . [inaudible]." An officer then says, "Medical stated no injuries." An officer reads a statement about decontamination procedures to Grizzle through the door. The video ends.

For screening purposes, Grizzle's allegations, taken as true, sufficiently state a claim for excessive force under the Eighth Amendment against McIntire. Grizzle's alleges that McIntire employed force *after* Grizzle agreed to comply with the strip search order, despite having previously disobeyed McIntire's orders. *See* Compl. 20; Tr. 3:06:17–:06:28; *cf. Brown v. Vasquez*, No. 5:14-CV-198-BG, 2015 WL 13662177, at *3 (N.D. Tex. Sept. 11, 2015) (dismissing at screening where "inmate was given numerous orders and refused to comply with the orders before each burst of chemicals"); *Scarbough v. Halliburton*, No 2:99–CV–0190, 2001 WL 283105, at *2 (N.D. Tex. Mar. 20, 2001) ("Consistent and escalating refusal to cooperate, that is, refusal to comply with lawful orders, especially in the face of repeated warnings, may justify some use of force."). And while the Court need not accept as true any allegations that are shown to be plainly contradicted by the video, the video does not clearly contradict Grizzle's allegations because his conversations with officers immediately before each administration of C.S. gas are inaudible. *Cf. Gonzales v. Rowe*, No. 5:20-CV-052-BQ, 2020 WL 4811005, at *3 (N.D. Tex. July 27, 2020) (dismissing use of force claim in part because the "video footage from the incident show[ed] [inmate] refusing to comply with the [o]fficers' repeated orders").

### III. Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Judge **DENY** Defendants' Motion to Dismiss. *See* ECF No. 28. Further, the district judge should **DENY** Grizzle's Motion to Amend because the Court lacks jurisdiction over those claims Grizzle has appealed. *See* ECF No. 34.

Finally, given the timeframe set forth by the district judge in the referral order, it appears prudent to transfer the case back to the district judge for further proceedings. Alternatively, the undersigned recommends the district judge stay all proceedings pending the outcome of the appeal. *See* ECF No. 31.

It is therefore **ORDERED** that the transfer of this case to the United States Magistrate Judge is terminated and the case is hereby transferred back to the docket of the United States District Judge. The case shall hereinafter be designated as Civil Action Number 5:22-CV-017-H.

### IV. Right to Object

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district

court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: March 31, 2023.

_____
**D. GORDON BRYANT, JR.**
**UNITED STATES MAGISTRATE JUDGE**

16